# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHRISTINA, S[1]**, | Case No. 3:17-cv-01735-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,** Deputy Defendant for Operations, performing the duties and functions not reserved to the Defendant of Social Security, | |
| Defendant. | |

Merrill Schneider, SCHNEIDER KERR & ROBICHAUX, P.O Box 14490, Portland, Oregon 97293. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Thomas M. Elsberry, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Christina S. ("Plaintiff") seeks judicial review of the final decision of the Social Security

Administration ("Defendant") denying Plaintiff's application for Disability Insurance Benefits

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

("DIB") under Title II of the Social Security Act, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the following reasons, Defendant's decision is reversed and remanded for further proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The district court must affirm Defendant's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, Defendant's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if Defendant's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of Defendant. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm Defendant on a ground upon which Defendant did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff was born on March 9, 1978. AR 30. Plaintiff filed for DIB and SSI on June 13, 2013. AR 20. She alleges disability beginning March 10, 2012, when she injured her arm while working as a secretary. AR 60, 318. The injury created arm spasms, increased Plaintiff's anxiety, and led Plaintiff to stop working in her secretarial position. *Id*. Plaintiff was 34 years old at the time of the alleged disability onset date. AR 30.

Defendant denied Plaintiff's application initially and upon reconsideration. AR 1, 20. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On June 2, 2016, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. AR 17-19. The Appeals Council declined Plaintiff's request for review of the ALJ's decision. AR 1. Plaintiff now seeks judicial review of the ALJ's decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under Defendant's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. Defendant

bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, Defendant must

show that the claimant can perform other work that exists in significant numbers in the national

economy, "taking into consideration the claimant's residual functional capacity, age, education,

and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which

exists in the national economy"). If Defendant fails to meet this burden, the claimant is

disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, Defendant proves that

the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d

at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff was not disabled under §§ 216(i), 223(d) and 1614(a)(3)(A)

of the Social Security Act. At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity after March 10, 2012. AR 22-23. At step two, the ALJ found Plaintiff

had the following severe impairments: major depressive disorder; general anxiety disorder;

osteoarthritis; and ulnar neuropathy. AR 23. The ALJ also found that Plaintiff had the following

non-severe conditions: obesity, hyperlipidemia, headaches, diverticulosis, gastritis, and

marijuana use. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ then determined that

Plaintiff has an RFC to perform light work with additional restrictions. AR 25-26. These

restrictions include, among others, the ability to perform work that is not at a production pace;

completing simple work-related decisions; engaging in occasional superficial contact with the

public, co-workers, and supervisors; and requiring the option to change her sit and stand option after 60 to 90 minutes, for three to five minutes. *Id*. At step four, the ALJ determined that Plaintiff could not perform any past relevant work. AR 30. At step five, relying on the testimony of a vocational expert, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ thus concluded that Plaintiff was not disabled under the Social Security Act. AR 31.

## DISCUSSION

Plaintiff contends that the Court should remand the ALJ's decision, arguing that the ALJ (A) improperly rejected portions of Dr. Manuel Gomes' opinion and (B) improperly rejected Plaintiff's subjective testimony regarding her mental health symptoms.

## A. Dr. Gomes' Opinion

Dr. Gomes opined that Plaintiff had "severe impairment in her ability to tolerate the usual workplace stressors as she is currently experiencing high levels of anxiety and is experiencing panic attacks" and that she would be "quite sensitive to being triggered, responding strongly to any psychological stimuli such as excitement." AR 322-33. The ALJ gave little weight to Dr. Gomes' opinion for three reasons. First, Dr. Gomes did not account for Plaintiff's abilities if she followed up with consistent mental health counseling and took medication for her psychological symptoms as prescribed. AR 29. Second, Dr. Gomes' opinion was inconsistent with Plaintiff's wide variety of daily and work activities. *Id.* Third, Dr. Gomes' opinion was not consistent with the record as a whole. *Id.* Plaintiff argues that these three reasons are insufficient to reject Dr. Gomes' opinion.

### 1. Standard for Examining Physician Opinions

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164

(9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a nonexamining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons

are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Nonexamining state agency medical consultants found that the record does not support Dr. Gomes' more restrictive opinion. AR 93, 96, 105, 107. The consultants faulted Dr. Gomes' opinion as overly reliant on Plaintiff's subjective symptoms and limitation reports. *Id.* Because other physicians' opinions contradict Dr. Gomes' opinion, the ALJ may discredit Dr. Gomes' opinion provided the ALJ's reasons are specific, legitimate, and supported by substantial evidence. *See Roberts*, 66 F.3d at 184.

Specific, legitimate reasons for rejecting a physician's opinion may include a physician's reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it).

 "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). In other words, "[t]he ALJ must do more than offer his

conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### 2. Consistent Counseling and Medication

The ALJ gave Dr. Gomes' opinion about Plaintiff's stress tolerance and anxiety little weight because "Dr. Gomes did not account for [Plaintiff's] abilities if she followed up with consistent mental health counseling and took medication treatment for her mental symptoms as prescribed." AR 29. The ALJ noted that Plaintiff was strongly encouraged to seek counseling but did not follow up with counseling after 2009. AR 27. The ALJ also noted that Plaintiff reported that her mental symptoms generally were stable when she took her prescribed medications. *Id.*

### a. Consistent Counseling

The ALJ's explanation that Plaintiff was strongly encouraged to seek counseling and did not follow up with counseling after 2009 is related to Plaintiff's anxiety and stress tolerance. Specifically, as Plaintiff argues, she discontinued treatment because of her frequent panic attacks and fear of leaving the house. AR 267. The record supports Plaintiff's argument. Medical notes on Plaintiff's mental health progress stated that she "isolates self and doesn't leave house." AR 457. Additional physician notes from 2015 state that Plaintiff "[a]voids leaving house." AR 523. Plaintiff also told the ALJ that for periods of time she will not leave the house. AR 63.

The Ninth Circuit has rejected similar reasons that fault a claimant's failure to seek treatment when that failure is a product of the claimant's impairment. A claimant "may have failed to seek psychiatric treatment for [her] mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). The ALJ thus erred in rejecting Dr. Gomes' opinion on the basis of Plaintiff's failure to seek counseling without addressing the evidence that anxiety contributed to Plaintiff's discontinuation of counseling.

### b. Medication and Plaintiff's Continued Anxiety

The ALJ found that Plaintiff denied suicidal ideation and reported that her mental symptoms are generally stable when she takes medication as prescribed. The ALJ cited to: (1) medical records dealing with physical symptoms and physical exams, predominantly Plaintiff's ulnar neuropathy, a colonoscopy, abdominal pain, and rectal bleeding, AR 416-453; (2) an emergency room report from March, 12, 2012, AR 552; (3) a broad assortment of medical treatment notes, AR 454-507; and (4) emergency department records from July 29, 2014, AR 398. Half of these citations are unspecific, unexplained, and broad references to the record; the other half are "cherry picked" medical notes that fail to provide substantial evidence for the ALJ's finding. *See Garrison*, 759 F.3d at 1017 n. 3 (holding that an ALJ may not "cherry pick" from "mixed results to support a denial of benefits").

The ALJ's general citation to a range of medical records that are focused on numerous physical ailments, AR 416-453, is unexplained and unclear. AR 27. The only medical notes in that section of the record regarding anxiety contradict the ALJ's finding that medication generally stabilized Plaintiff's anxiety and stress tolerance. Specifically, "[s]ignificant findings" from a medical examination state that Plaintiff "appears anxious." AR 420. Notes from an office visit to a gastroenterologist on May 14, 2015, list "depression" and "other psychological

symptoms" under a "review of the symptoms." AR 417. The notes from the gastroenterologist office visit also list duloxetine as an active medication. AR 416. This means that Plaintiff's depression and "other psychological symptoms" were listed as active symptoms when Plaintiff was taking medication for anxiety and depression.

The ALJ also cited to two treatment notes from June 23, 2015, when Plaintiff was establishing care as a new patient. AR 27, citing 454-507. The first treatment note states: "[m]ultiple medical issues, most signif[icant] of which are depression with history of suicide attempt (now stable on duloxetine)." *Id*. Because the issue on appeal deals with anxiety and stress tolerance, not depression and suicidal ideation, record evidence about medication stabilizing depression and suicidal ideation does not address the distinct issue about anxiety and stress tolerance. In other words, the ALJ conflated Plaintiff's anxiety and depression symptoms.

The second treatment note from the same visit states:

> **ASSESSMENT/PLAN: 1. MAJOR DEPRESSIVE DISORDER, RECURRENT EPISODE, IN PARTIAL REMISSION** PHQ-9 is 12 today, which patient states better than before. However, still not in full remission and still with signs of anxiety, isolates self and doesn't leave house. Given history of previous hospitalizations, I strongly encouraged patient to establish with mental health and given numbers for medicaid resources.

AR 457. This treatment note provides evidence that medical professionals encouraged Plaintiff to seek mental health treatment. It also suggests that at this moment in time Plaintiff's major depression was "better than before," although only in partial remission. Again, however, such findings are distinct from evidence showing that medication or counseling could improve Plaintiff's ability to tolerate anxiety and workplace stressors. The treatment note uses the word "stable" to refer to depression and suicidal ideation, but not with respect to anxiety. To the contrary, this treatment note describes a patient who, despite taking medication, is "still with signs of anxiety" and isolated herself within her house.

The ALJ's citation to the emergency room report from March, 12, 2012, AR 552, is a treatment note that Plaintiff "denies any significant stressors at this time." The treatment note relates to medical records regarding Plaintiff's right arm injury and does not indicate whether Plaintiff was on psychological medication at the time of this visit. Although Plaintiff's own denial of any stressors on that date offers tangential support for the ALJ's finding, additional notes from the same medical visit are telling. The final "discussion" from the same medical visit states that the doctor's "gut instinct" was that Plaintiff's complaints were not an acute neurological issue, and the doctor's "only concern" was whether Plaintiff's neck pain could somehow be a kind of "anxiety reaction" on top of a carotid dissection. AR 553. The doctor noted that Plaintiff's physical complaints were "potentially" due to a "conversion disorder."[2] *Id*. Rather than show that medication mitigates Plaintiff's anxiety, the total context of the emergency room treatment notes align with Dr. Gomes' opinion that Plaintiff faces an impairment due to her strong responses to psychological stressors.

The ALJ's citation to a medical treatment note from July 29, 2014, when Plaintiff visited the emergency department because of head pain after a water gun hit her near her temple, also does not support the ALJ's finding. AR 27, citing AR 398. The page of the treatment notes list anxiety and depression under "Past Medical/ Family/ Social History" as "resolved" rather than "active." AR 398. Paxil is also listed as a "documented medication." *Id.* The categorization of anxiety as "resolved" is near meaningless, however, for multiple reasons.

First, neither the treatment note nor the ALJ explains or describes the meaning or the basis of the note. Does "resolved" refer to Plaintiff's "Past Medical" diagnoses of depression and

---

[2] A conversion disorder relates, generally, to a somatic condition where a mental disorder manifests in physical symptoms. *See* 24 Am. Jur. Proof of Facts 3d 187 (Originally published in 1994); 1 Medical Information System For Lawyers § 5:41 Somatoform disorders— Classification—Conversion disorder (2d).

anxiety relating to her two suicide attempts, or does the treatment note mean that Plaintiff's past anxiety resolved and that, at the time of the medical visit, she also had no further anxiety that would pose a barrier to employment? Second, treatment notes "must be read in context of the overall diagnostic picture the provider draws," *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014), and "[r]eports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at 1017. The same emergency department records state that Plaintiff had a history of chronic pain, anxiety, and depression. AR 392. Additionally, during a separate visit to the emergency room a few months earlier on May 5, 2014, where Plaintiff presented with sudden chest and epigastric pain that migrated up into her neck that began while experiencing bowel movements, treatment notes under "Differential Diagnosis" included "anxiety." AR 403. The ALJ erred by "pick[ing] out a few isolated instances of improvement over a period of months or years and . . .treat[ing] them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

Third, Plaintiff's visit to the emergency room after being hit with a water gun aligns with Dr. Gomes' opinion that Plaintiff will "respond[] strongly to any psychological stimuli." AR 322-23. Plaintiff responded strongly—*i.e.* became anxious enough to go to the emergency room—to stimuli, such as a water gun hitting her head or experiencing chest pain during bowel movements. AR 392, 401. For the above three reasons, the Court does not find that one unexplained and unsupported use of the word "resolved" is sufficient medical evidence to discredit Dr. Gomes' opinion. AR 398. The fact that the other medical evidence cited by the ALJ to discredit Dr. Gomes' actually supports the doctor's opinion further supports this conclusion.

### c. Dr. Gomes Considered the Effects of Medication and Counseling

Dr. Gomes considered the effects of medication and Plaintiff's history of on-and-off counseling treatment when he formed his opinion. Therefore, even if the ALJ offered specific and legitimate reasons that were supported by substantial evidence to explain that medication improved Plaintiff's anxiety and stress tolerance (which the Court has rejected), the ALJ's reasoning for discrediting Dr. Gomes' would still not be legitimate. Dr. Gomes noted that Plaintiff stated she has "tried multiple different antidepressants in the past without any success." AR 316. Dr. Gomes noted that Plaintiff was psychiatrically hospitalized twice for suicide attempts. AR 317. The first hospitalization, in 1994, was involuntary after Plaintiff cut her wrists. *Id.* The second hospitalization, in 2009, was voluntary and occurred after Plaintiff overdosed on prescription medication. *Id.* Dr. Gomes noted that Plaintiff engaged in outpatient treatment "on and off" since the 1994 hospitalization. *Id.* Dr. Gomes also noted that Plaintiff's last therapy session was a few months after the 2009 hospitalization and that Plaintiff reported finding the session somewhat helpful. *Id.*

Dr. Gomes, therefore, set out in his report that: (1) Plaintiff engaged in "on and off" mental health counseling and prescription medication after her first suicide attempt; (2) this treatment did not prevent a second suicide attempt; (3) Plaintiff found therapy "somewhat helpful" after her second suicide attempt (meaning that Plaintiff's statement was using a suicide attempt as the baseline for improvement); (4) Plaintiff's use of prescription medication was connected to her second suicide attempt; and (5) Plaintiff reported to Dr. Gomes that she had tried multiple different antidepressants without success. Aware of this information about previous medication and counseling, Dr. Gomes formed his opinion that Plaintiff was severely limited in her ability to handle workplace stressors and will be quite sensitive to being triggered to stimuli in the workplace. Accordingly, the ALJ's conclusion that Dr. Gomes did not consider

Plaintiff's abilities if she followed up with consistent mental health counseling and took medication for her mental symptoms as prescribed is not supported by substantial evidence.

### 3. Daily and Work Activities

The second reason the ALJ gave little weight to Dr. Gomes' opinion on stress tolerance is that Dr. Gomes' opinion was inconsistent with Plaintiff's "wide variety of daily activities and with her work activities during the period at issue." AR 29. The ALJ concluded that Plaintiff "has no restrictions" in daily living activities. AR 24. The ALJ relied on Plaintiff's statements that she is raising two children, prepares family meals, shops in grocery stores, drive a car, recently made a mask with her son, and enjoys playing card games and dominoes at home. *Id.* The ALJ also relied on Plaintiff's husband's statement that Plaintiff can lift up to 30 pounds and can walk five blocks before requiring rest. Regarding work activities, the ALJ noted that Plaintiff balances the family's finances and cares for her children. AR 29. These activities, according to the ALJ, contradict Dr. Gomes' opinion.

Plaintiff's ability to complete home activities does not contradict Dr. Gomes' opinion on *workplace* stressors. *See Garrison*, 759 F.3d at 1016 (cautioning ALJ's from concluding that daily activities are inconsistent with testimony about pain because "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day"); *see also Smolen*, 80 F. 3d 1287 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."); *Reddick*, 157 F.3d at 722 (stating that claimants "should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, Plaintiff's daily household activities are more limited than as characterized by the ALJ.

Plaintiff stated that, on "good days," she completes some housework with the assistance of her 16-year-old son. AR 74, 318. Plaintiff estimates this occurs every other day, as she takes the following day to rest in bed. AR 74, 318. Plaintiff also does not vacuum or do laundry and stated that she cannot complete harder cleaning tasks like "scrubbing" without assistance from her husband. AR 75. Plaintiff also stated that on good days she does the cooking, yet the ALJ did not develop any additional detail, such as whether "do[ing] the cooking" means unwrapping and heating frozen food or preparing elaborate meals. Plaintiff's limited household activities do not contradict Dr. Gomes' opinion. AR 30.

Plaintiff's statements regarding her driving activities also do not contradict Dr. Gomes' opinion. Plaintiff stated she only drives a few times a week to and from a grocery store that she estimates at less than three miles from her home. AR 12. Plaintiff estimates she probably forgets her keys in the car every time she drives. AR 26. Plaintiff also avoids driving at night. AR 48, 117, 316. Most notably, Plaintiff stated she had a panic attack while driving home from the grocery store a week before the ALJ hearing. AR 76, 77. For about 20 minutes her "brain just completely locked up." AR 77. Her legs shook, her arms shook, and she "had to pull over for a good period of time." *Id.* The recent panic attack was not an isolated event. Other panic attacks required Plaintiff's husband to ride a bicycle to her location and pick her up because she did not feel safe to drive the car home. *Id.* Plaintiff's statements display numerous restrictions on her driving ability.

In sum, Plaintiff's limited ability to perform household chores, drive, cook meals, play dominoes, or guide a child coloring a paper mask does not contradict Dr. Gomes' opinion. As the Ninth Circuit has held, Plaintiff need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987); *see also Vertigan v.*

*Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))).

Defendant cites *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), to argue that Plaintiff's activities of raising two children is inconsistent with Dr. Gomes' opinion. *Rollins* is distinguishable. First, Rollins' daily activities exceeded Plaintiff's. Rollins drove extensively and much more successfully than Plaintiff. Second, unlike Plaintiff, who receives assistance from her husband and son, Rollins cared for two "manic-depressive/hyperactive boys with little help from a troubled and often-absent husband," Brief for Appellee at 23-24, *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001), (No. 99-55977). Third, the treating physician in *Rollins* recommended that claimant avoid any "bending, stooping, crouching, crawling, kneeling, climbing, and balancing" and never face exposure to any "smoke, fumes, dust, temperature extremes, humidity, vibrations, or noise." *Rollins*, 261 F.3d at 856. The ALJ found that these recommendations "were so extreme as to be implausible." *Id.* The Ninth Circuit agreed and found no basis for the recommendations. The claimant herself did not even claim to have problems with many of the restrictions, the restrictions were inconsistent with the same doctor's description of claimant as in "no acute distress," and the extreme medical recommendations were inconsistent with claimant's activities of "maintaining a household and raising two young children, *with no significant assistance from her ex husband.*" *Id.* (emphasis added).

### 4. Record as a whole

The third reason the ALJ gave little weight to Dr. Gomes' opinion on stress tolerance is that Dr. Gomes' opinion was inconsistent with the record as a whole. AR 29. The ALJ's third

reason is not a specific or legitimate reason to discount Dr. Gomes' opinion for the reasons discussed above, and because the ALJ did not offer any additional specific or legitimate examples or explanations on how the record as a whole contradicts Dr. Gomes' opinion.

## B. Plaintiff's Symptom Testimony

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the evidence in the record is not entirely consistent with the intensity, persistence, and limiting effects of the physical or mental symptoms. AR 26. The ALJ offered specific, clear, and convincing reasons for discrediting Plaintiff's subjective testimony on the limitations related to her physical impairments. The ALJ however, did not offer specific, clear, and convincing reasons for rejecting Plaintiff's testimony regarding her psychological impairment to tolerate stress due to anxiety.

### 1. Standard for Subjective Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, Defendant superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. Defendant recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. Defendant recommends assessing: (1) the claimant's statements made to Defendant, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and

(3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7. SSR 16-3p governs because the ALJ's decision was issued on June 2, 2016.

The ALJ's decision on a plaintiff' subjective testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount a plaintiff's testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Physical Impairments

The ALJ concluded that the record does not support Plaintiff's allegations regarding the severity of her physical limitations. The ALJ explained that Plaintiff often sought treatment for vague physical symptoms that clinicians could not diagnose with a specific etiology and that Plaintiff's statements were inconsistent with physical examination notes. AR 26. For example, physical examinations showed that Plaintiff had normal muscle strength bilaterally in her upper extremities throughout the period she is alleging disability. *Id.* The ALJ provided by way of example that Plaintiff stated that ulnar neuropathy limits her ability to use her hands and lift objects, but that treatment notes dated September 2014 show that Plaintiff did not seek recommended follow up treatment for her ulnar neuropathy and the condition spontaneously resolved. AR 27. The ALJ also explained that Plaintiff had significant gaps in her treatment. AR 26. These are specific, clear, and convincing reasons for discounting Plaintiff's subjective testimony on the limitations caused by her physical impairments.

### 3. Mental Impairments

The ALJ also discounted Plaintiff's testimony regarding the severity of her mental impairments. AR 27. The ALJ explained that Plaintiff's mental health condition stabilized when

taking medication, Plaintiff was not pursuing consistent mental health counseling, and Plaintiff's wide variety of daily activities do not support the severity of her alleged mental limitations. *Id.* The ALJ further stated that Plaintiff denied suicidal ideation in her examination with Dr. Gomes, Plaintiff's marijuana use could contribute to her concentration problems and her lack of focus, and few objective findings of functional restrictions exist. *Id.*

### a. Medication, Daily Activities and Suicidal Ideation

As discussed above in addressing Dr. Gomes' opinion, the Court rejects the ALJ's rationale regarding mental health counseling and the ALJ's conclusions that the record shows that medication improves Plaintiff's anxiety and stress tolerance, that Plaintiff's daily living activities contradict her purported limitations, and that Plaintiff's denial of suicidal ideation to Dr. Gomes discredits Plaintiff's symptom testimony regarding anxiety and stress tolerance. For the same reasons they were not specific and legitimate reasons to discount Dr. Gomes' opinions, they are not clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

### b. Conservative and Inconsistent Treatment

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162 (stating that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment"). Plaintiff offered good reasons for not seeking more aggressive treatment and, therefore, conservative treatment is not a proper basis for rejecting Plaintiff's symptoms.

Plaintiff explains that she did seek treatment and that factors interrupted more aggressive treatment. Specifically, Plaintiff was using Paxil in 2014, tried other medications in the past, and was open to trying new medications. Plaintiff discontinued her use of that medication after 2015 because of a suicide attempt, which Plaintiff contributed to Cymbalta. AR 64-65. Additional evidence in the record substantiates Plaintiff's explanation that factors interrupted more aggressive treatment. *See* AR 65-66 (explaining that stomach pain and an inflamed digestive tract, insurance changes, and a sense of anxiety about starting over with a new counselor interrupted Plaintiff's medication and counseling treatment); AR 270-89 (showing that doctors changed Plaintiff's medication due to ineffective pain relief and side effects).

Plaintiff also explains that her anxiety itself limited her ability to seek more aggressive psychological treatment. Fixation on pain and physical complaints led her to set aside mental health concerns while seeking answers for her physical complaints. The record substantiates this explanation. *See* AR 322 (noting Plaintiff's "preoccupation and beliefs about her health status is creating uneven cognitive functional levels"); AR 319-20 (noting that Plaintiff experienced "suicidal thoughts when she was worried that she might have multiple sclerosis").

Relatedly, Plaintiff argues that seeking treatment for numerous physical symptoms was a consistent, albeit indirect, effort to seek treatment for her underlying psychological condition. Plaintiff explains that anxiety manifested as a preoccupation with medical health and pain levels where anxiety produced the "vague, non-specific symptoms" for which the clinicians could not find an exact etiology and that the ALJ cites as evidence for inconsistent subjective testimony. For example, Plaintiff described her physical pain as really bad when her anxiety was bad and manageable when her anxiety was lower. AR 64-65. Plaintiff's position is that multiple efforts to seek treatment for physical pain and vague physical symptoms were, in effect, consistent efforts

to treat anxiety. The record supports this explanation. *See* AR 404 (noting that Plaintiff "[h]as had various vague symptoms for [two] years now and seen multiple specialists without answers"). Seeking physical diagnoses may be an indirect approach to treat underlying psychological symptoms, but the Court will not penalize Plaintiff's judgment for her methods of seeking psychological care. *See Nguyen*, 100 F.3d at 1465 (stating that "to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" is a questionable practice.).[3]

### c. Marijuana Use and Objective Findings

The ALJ found that Plaintiff's marijuana use could contribute to concentration problems and her lack of focus. *Id.* The ALJ offered no medical evidence for this conclusion and no evidence that any doctor provided this information to Plaintiff. Assuming that the ALJ's marijuana conclusion was true, problems with concentration and focus have no relevance to Plaintiff's statements concerning anxiety and panic attacks.

The ALJ also concluded that few objective findings indicated significant mental functional restrictions. Plaintiff disputes the ALJ's finding that a psychological examination found little evidence to support the severity of her alleged limitations. Plaintiff notes that

---

[3] Defendant cites to *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (2001), to support the argument that Plaintiff's lack of treatment undermines her allegations of debilitating symptoms and to argue that *Nguyen*, 100 F.3d 1462, is not controlling. In *Osenbrock*, the Ninth Circuit affirmed an ALJ's decision to reject subjective testimony. The ALJ provided clear and convincing reasons to reject the claimant's excess subjective testimony on physical limitations. *Id.* The record included a treating physician's and nonexamining consultant's opinions that claimant was capable of working and "should be in pretty good shape within three to six months." *Id.* at 1162. Unlike the ALJ's findings here on Plaintiff's stress tolerance, the ALJ in *Osenbrock* provided detailed and specific reasons to reject subjective physical testimony and cited medical evidence contrary to the subjective claims. This is distinct from giving little weight to a medical opinion that supports subjective testimony and then rejecting subjective testimony for lacking support in the record. Furthermore, *Osenbrock* dealt with subjective testimony regarding physical complaints, unlike the situation here, while *Nguyen* dealt with mental health, similar to Plaintiff's testimony at issue.

Dr. Gomes conducted that psychological exam and even though the ALJ rejected Dr. Gomes' opinion on a severe impairment, the opinion is objective evidence that supports Plaintiff's subjective testimony. The Court does not need to resolve this dispute because a lack of objective medical evidence alone does not justify discrediting Plaintiff's subjective testimony. *See Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." (quotation marks and citation omitted); *see also Robbins*, 466 F.3d at 883. Moreover, the Court has rejected the ALJ's discounting of Dr. Gomes' opinion.

In sum, the ALJ did not consider all the evidence or offer clear and convincing reasons to reject Plaintiff's symptom testimony regarding the limitations that her mental impairments caused. This created a substantial likelihood of prejudice in Plaintiff's disability determination.

## C. Remand for Further Proceedings

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Further administrative proceedings are required to resolve ambiguities concerning Dr. Gomes' opinion and Plaintiff's symptom testimony. The Court remands the matter for further administrative proceedings consistent with this Opinion and Order.

## CONCLUSION

Defendant's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 7th day of December, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge